**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-5020**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LUIS CORCHO SUAREZ,

Defendant - Appellant.

**No. 08-4022**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ERNESTO PRIETO OSORIO,

Defendant - Appellant.

Appeals from the United States District Court for the Western District of North Carolina, at Statesville. Richard L. Voorhees, District Judge. (5:06-cr-00049-RLV; 5:06-cr-00049-RLV-1)

Submitted: December 23, 2008        Decided: January 30, 2009

Before GREGORY, DUNCAN, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

Marcia G. Shein, LAW OFFICE OF MARCIA G. SHEIN, P.C., Decatur, Georgia, for Appellants. Gretchen C. F. Shappert, United States Attorney, Adam Morris, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Luis Corcho Suarez entered a conditional plea of guilty to one count of conspiracy to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 846 (2006), and was sentenced to sixty months' imprisonment. Ernesto Prieto Osorio entered a conditional plea of guilty to one count of conspiracy to possess with intent to distribute at least five kilograms of cocaine and one count of possession with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846 (2006), and was sentenced to the statutory mandatory minimum of 120 months' imprisonment. Finding no error, we affirm.

On appeal, Suarez and Osorio contend the district court erred in denying their motions to suppress the cocaine seized from the vehicle in which they were traveling. We review the court's factual findings underlying the denial of a motion to suppress for clear error and its legal conclusions de novo. United States v. Branch, 537 F.3d 328, 337 (4th Cir. 2008). The evidence is construed in the light most favorable to the prevailing party below. United States v. Uzenski, 434 F.3d 690, 704 (4th Cir. 2006).

Suarez and Osorio, who are both Cuban, contend that the traffic stop initiated by law enforcement was pretextual and racially motivated. The Supreme Court "uniformly has held that

3

the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." United States v. Knotts, 460 U.S. 276, 280 (1983). "A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." Id. at 281. Moreover, "if an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment." United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993).

We have specifically rejected the test advanced by Appellants, which would require a court to look to the officer's subjective motivations in initiating a traffic stop, in favor of an objective test. Id. Thus, "when an officer observes a traffic offense or other unlawful conduct, he or she is justified in stopping the vehicle under the Fourth Amendment," regardless of whether the officer's interest in the vehicle was based on "intuitive suspicions that the occupants of the car [were] engaged in some sort of criminal activity." Id.

Here, the officer who initiated the traffic stop determined that Appellants' vehicle was exceeding the speed limit by thirteen miles per hour. Neither Suarez nor Osorio challenges the district court's determination that they were

speeding. Instead, they argue that the "inception" of the stop occurred when officers first determined that the vehicle was suspicious. However, until a seizure implicating the Fourth Amendment has occurred, officers are "not required to have a 'particularized and objective basis for suspecting [an individual] of criminal activity,' in order to pursue him." Michigan v. Chesternut, 486 U.S. 567, 576 (1988) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Under the facts of this case, Appellants cannot establish that they were "seized" for Fourth Amendment purposes merely because the officers determined that their vehicle was suspicious. See Terry v. Ohio, 392 U.S. 1, 20 n.16 (1968) (stating a seizure occurs when an "officer, by means of physical force or show of authority, has in some way restrained the liberty of" an individual).

Appellants' contention that the stop was racially motivated is likewise without merit. Allegations of racially motivated law enforcement implicate the Equal Protection Clause rather than the Fourth Amendment. United States v. Bullock, 94 F.3d 896, 899 (4th Cir. 1996). The standard for establishing a selective enforcement claim is "demanding" and requires evidence that clearly contradicts the presumption that officers have not violated equal protection. United States v. Armstrong, 517 U.S. 456, 463-65 (1996); see also Bullock, 94 F.3d at 899 (applying

5

<u>Armstrong</u> in traffic stop case).  A defendant must therefore establish that the law enforcement practice "had a discriminatory effect and that it was motivated by a discriminatory purpose."  <u>Armstrong</u>, 517 U.S. at 465.  Moreover, a defendant must show that the law enforcement practice was not enforced against "similarly situated individuals of a different race."  <u>Id.</u>

Other than contradictory testimony on the issue of whether one officer described Appellants as "black," there is nothing in the joint appendix to suggest that race played any part in the traffic stop.  The district court determined that even assuming the comment was made, it was merely a descriptor used to identify the vehicle's occupants rather than evidence of improper racial motivation.  Additionally, there is no evidence in the joint appendix establishing that the officers failed to stop individuals of other races for exceeding the speed limit by more than ten miles per hour.

Suarez and Osorio also contend that the request for consent to search the vehicle was improper.  They incorrectly argue that probable cause is required before an officer may seek consent to search.  See <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 219 (1973) ("[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.").  Rather, where

6

officers "lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable evidence." Id. at 227. "The circumstances that prompt the initial request to search may develop quickly or be a logical extension of investigative police questioning." Id. at 232.

In this case, there is no evidence that the officers used any coercive tactics in obtaining consent. After Appellants' identification cards and vehicle registration were returned to them, they were informed that they were free to leave. Appellants do not allege, and the joint appendix does not show, that the officers drew their weapons, behaved in an antagonistic manner, or otherwise informed Suarez or Osorio that they were under arrest prior to requesting consent to search. The totality of the circumstances therefore establishes that consent was voluntarily rendered. See Schneckloth, 412 U.S. at 248-49 ("Voluntariness is a question of fact to be determined from all the circumstances . . . ."). Thus, we conclude the district court did not err in refusing to suppress the evidence obtained during the vehicle search.

Osorio additionally contends that the district court erred in determining that he was ineligible for a reduction under U.S. Sentencing Guidelines Manual ("USSG") § 5C1.2(a) (2006) ("the safety valve"). To qualify for sentencing under

7

the safety valve provision, a defendant must meet all five criteria set forth in 18 U.S.C. § 3553(f) (2006), and incorporated in USSG § 5C1.2(a). The district court's determination of whether a defendant has satisfied the safety valve criteria is a question of fact reviewed for clear error. United States v. Wilson, 114 F.3d 429, 432 (4th Cir. 1997).

We have previously stated that the "plain and unambiguous language of [18 U.S.C. § 3553(f)(5)] obligates defendants to demonstrate, through affirmative conduct, that they have supplied truthful information to the Government." United States v. Ivester, 75 F.3d 182, 184-85 (4th Cir. 1996). Such information includes everything the defendant knows about "the offense or offenses that were part of the same course of conduct or of a common scheme or plan." USSG § 5C1.2(a)(5).

The information provided by Osorio was vague and, at times, contradictory. Furthermore, a birth certificate issued in another individual's name as well as other documents discovered in Osorio's possession were never fully explained. Thus, the district court cannot be said to have clearly erred in determining that Osorio's provision of "vague, incomplete, and in several aspects, untruthful" information rendered him ineligible for the safety valve reduction.

Accordingly, we affirm the judgments of the district court. We dispense with oral argument because the facts and

8

legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>